A. BENETTI NOVELTY CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17064. Promulgated December 22, 1949.

*Arthur H. Kent, Esq.,* and *Valentine Brookes, Esq.,* for the petitioner.

*R. G. Harless, Esq.,* for the respondent.

---

OPINION.

HILL, *Judge*: Respondent determined deficiencies as follows:

| Year | Tax | Deficiency |
|------|-----|-----------|
| 1943 | Excess profits tax | $6,630.67 |
| 1944 | Declared value excess profits tax | 155.10 |
| | Excess profits tax | 1,879.78 |
| 1945 | Declared value excess profits tax | 377.54 |
| | Excess profits tax | 4,624.79 |

Based upon certain stipulated amounts, petitioner concedes an uncomputed part of the deficiencies determined for 1943 and 1945. The question for decision is, Did respondent err in determining that the profit from the sale of certain machines which petitioner sold during the taxable years was ordinary income rather than long term capital gain, as reported by petitioner?

All the facts were stipulated and they are so found.

Petitioner is a Nevada corporation, with its principal place of business in Reno. Its tax returns for the years involved were filed with the collector of internal revenue for the district of Nevada.

Petitioner's principal source of income is from the rental of slot or coin machines and phonographs and the sale of bar supplies and equipment. During the taxable years it reported income from the following activities:

| | 1943 | 1944 | 1945 |
|---|------|------|------|
| Slot machines and phonograph collections | $85,927.22 | $93,886.68 | $119,955.27 |
| Gross sales of supplies | 15,890.10 | 17,900.72 | 24,701.28 |
| Gross profit from sales | 4,993.34 | 6,531.44 | 10,188.96 |
| Net capital gains on equipment sales | 8,418.98 | 5,590.35 | 11,990.46 |
| Rentals and miscellaneous income | 2,524.43 | 1,848.70 | 2,257.91 |
| Net income per return | 25,484.38 | 23,801.41 | 42,718.11 |

During the period involved petitioner owned a substantial number of slot machines and phonographs which it had acquired by purchase and rented to bars, stores, and places of amusement throughout the State of Nevada, where gambling devices, such as slot machines, have been legalized. The usual arrangement was that the gross take of the machines would be divided equally between the local operator and the petitioner. Petitioner serviced the machines which it rented.

Prior to the taxable years petitioner made sales of slot machines and phonographs as opportunity arose to dispose of older, unwanted, less attractive types of machines, or when the use of such machines in a particular locality ceased. After the war began no new machines were made and scarcity arose. There was considerable demand for

such machines on the part of service canteens and officers' clubs. The United States Navy and the Marine Corps also were acquiring large numbers of used and rebuilt machines for shipment to overseas bases. During the taxable years new units were unobtainable and the demand forced the price of old machines upward. Petitioner was requested (the exact time is not disclosed) by various agencies of the Army and Navy to acquire for them as many of these machines as possible. Petitioner complied with these requests, sending its agents through Nevada and the adjoining states and buying any and all machines offered for sale. At one time 80 machines were bought in New Mexico, when state enforcement officers took steps to prevent free operation of the machines in that state.

During the taxable years petitioner deemed it advantageous to retain and use in its business the newest and most attractive machines so purchased and to sell to service clubs the oldest machines previously used by it in its regular operations. Machines used in petitioner's operations were regularly moved from the place of business where located to petitioner's service shops, where they were serviced, repaired, and, if necessary, rehabilitated. Machines which were sold or offered for sale had been in most cases first put through a process of rehabilitation. The following schedule sets forth slot machines and phonographs on hand at the beginning of the year, purchases, sales, and machines junked or stolen for the calendar years 1940 to and including 1947:

*Slot machines*

| Year | On hand at beginning of year | Purchases | Sales | Junked or stolen |
|------|------|------|------|------|
| 1940 | 305 | 25 | 22 | |
| 1941 | 303 | 17 | 38 | |
| 1942 | 287 | 12 | 43 | |
| 1943 | 255 | 47 | 88 | 1 |
| 1944 | 214 | 160 | 116 | 13 |
| 1945 | 245 | 269 | 207 | 22 |
| 1946 | 285 | 78 | 60 | 37 |
| 1947 | 266 | 75 | 23 | 56 |

*Phonographs*

| Year | On hand at beginning of year | Purchases | Sales | Junked or stolen |
|------|------|------|------|------|
| 1940 | 49 | 10 | 3 | |
| 1941 | 56 | 9 | 4 | |
| 1942 | 61 | 6 | 3 | |
| 1943 | 64 | 4 | 10 | |
| 1944 | 58 | 3 | 2 | 2 |
| 1945 | 57 | 5 | 3 | |
| 1946 | 59 | 15 | 11 | |
| 1947 | 63 | 42 | 31 | 7 |

The following schedule shows the number of machines sold to different classes of purchasers in each of the years 1943, 1944, and 1945:

| | 1943 | 1944 | 1945 |
|---|---|---|---|
| Sales to Army and Navy service clubs: | | | |
| Slot machines | 10 | 98 | 163 |
| Phonographs | 2 | | |
| Sales to others: | | | |
| Stands | 10 | 7 | 2 |
| Slot machines | 67 | 19 | 34 |
| Phonographs | 8 | 1 | 3 |
| Total | 97 | 125 | 202 |

The discrepancy in the totals between the table immediately above and that in the preceding paragraph is not explained in the record. Petitioner reported the full amount of gain realized from sales of machines which he purchased for resale to the Army and Navy or other purchasers.

The gains from sales of these machines for the calendar years 1943 to 1945, inclusive, are shown in the following table:

GAINS ON SALES OF MACHINES HELD SIX MONTHS OR LESS

| Year of sale | Proceeds | Costs | Depreciation | Gain |
|---|---|---|---|---|
| 1943 | $844.00 | $578.00 | | $266.00 |
| 1944 | 9,038.00 | 5,797.66 | | 3,240.34 |
| 1945 | 17,815.17 | 11,577.08 | $32.13 | 6,270.22 |

GAINS ON SALES OF MACHINES RENTED AND HELD OVER SIX MONTHS

1943

| | Date acquired | Cost | Selling price | Depreciation | Gain or (loss) |
|---|---|---|---|---|---|
| Phonographs: | | | | | |
| 1 Seeburg | 8/31/39 | $283.20 | $137.50 | $165.88 | $20.18 |
| 1 Wurlitzer | 9/12/36 | 260.77 | 50.00 | 260.77 | 50.00 |
| 1 Seeburg | 9/19/42 | 525.00 | 1,000.00 | 37.50 | 512.50 |
| 1 Seeburg | 7/6/38 | 289.00 | 150.00 | 185.76 | 46.76 |
| 1 Seeburg | 7/6/38 | 289.00 | 150.00 | 185.76 | 46.76 |
| 1 Seeburg | 7/6/38 | 289.00 | 185.00 | 185.76 | 81.76 |
| 1 Wurlitzer | 4/7/41 | 153.58 | 40.00 | 46.08 | (67.50) |
| 1 Wurlitzer | 4/23/42 | 75.00 | 75.00 | 7.50 | 7.50 |
| 1 Wurlitzer | 5/29/40 | 75.00 | 15.00 | 37.50 | (22.50) |
| 1 Wurlitzer | 1942 | 25.00 | 50.00 | 2.50 | 27.50 |
| Slot machines and stands: | | | | | |
| 14 slot machines | 1933 | 1,093.00 | 1,532.50 | 1,093.00 | 1,532.50 |
| 2 slot machines | 1934 | 74.50 | 125.00 | 74.50 | 125.00 |
| 8 slot machines | 1935 | 662.00 | 1,110.00 | 662.00 | 1,110.00 |
| 15 slot machines | 1936 | 1,175.00 | 1,610.00 | 1,175.00 | 1,610.00 |
| 5 slot machines | 1938 | 502.50 | 800.00 | 369.45 | 66.95 |
| 4 stands | 1938 | 139.75 | 95.00 | 114.64 | 69.89 |
| 7 slot machines | 1939 | 661.50 | 1,020.00 | 393.25 | 751.75 |
| 1 stand | 1939 | 9.50 | 5.00 | 6.35 | 1.85 |
| 8 slot machines | 1940 | 609.00 | 1,082.50 | 244.13 | 717.63 |
| 2 stands | 1940 | 49.50 | 51.00 | 22.55 | 24.05 |
| 7 slot machines | 1941 | 589.00 | 1,080.00 | 142.27 | 633.27 |
| 4 slot machines | 1942 | 292.50 | 320.00 | 17.17 | 44.67 |
| 3 stands | 1942 | 29.50 | 12.50 | 6.98 | (10.04) |
| 3 slot machines | 1943 | 194.00 | 345.00 | | 151.00 |
| Total | | 8,345.80 | 11,041.00 | 5,436.28 | 8,131.48 |

#### 1944

| Slot machines and stands: | | | | | |
|---|---|---|---|---|---|
| 10 slot machines | 1933 | $737.50 | $1,165.00 | $737.50 | $1,165.00 |
| 2 stands | 1933 | 45.00 | 39.50 | 45.00 | 39.50 |
| 1 slot machine | 1938 | 128.50 | 90.00 | 128.50 | 90.00 |
| 1 slot machine | 1939 | 111.50 | 175.00 | 92.91 | 156.41 |
| 5 slot machines | 1940 | 375.00 | 715.00 | 223.27 | 563.27 |
| 1 slot machine | 1941 | 111.50 | 125.00 | 51.29 | 64.79 |
| 2 slot machines | 1943 | 99.00 | 132.50 | 48.80 | 82.30 |
| 12 slot machines | 1944 | 750.00 | 897.50 | ---------- | 147.50 |
| Phonographs: | | | | | |
| 1 Wurlitzer | 1940 | 153.58 | 95.00 | 99.82 | 41.24 |
| Total | ---------- | 2,511.58 | 3,435.50 | 1,427.09 | 2,350.01 |

#### 1945

| 4 slot machines | 1938 | $1,275.00 | $1,275.00 | $1,275.00 | $1,275.00 |
|---|---|---|---|---|---|
| 1 phonograph | 1938 | 375.00 | 375.00 | 375.00 | 375.00 |
| 1 slot machine | 1940 | 175.00 | 200.00 | 145.85 | 170.85 |
| 6 slot machines | 1941 | 300.00 | 1,684.61 | 240.00 | 1,624.61 |
| 2 stands | 1941 | 5.00 | 9.00 | 5.00 | 9.00 |
| 2 slot machines | 1943 | 128.00 | 561.54 | 51.20 | 484.74 |
| 1 Seeburg phonograph | 1943 | 150.00 | 350.00 | 90.00 | 290.00 |
| 8 slot machines | 1944 | 1,318.52 | 1,501.18 | 150.09 | 332.75 |
| 2 slot machines | 1945 | 94.78 | 160.00 | ---------- | 65.22 |
| Total | ---------- | 3,821.30 | 6,116.33 | 2,332.14 | 4,627.17 |

The amounts shown as long term gains for all three years were excluded on the returns from excess profits net income for those years, and in computing income tax there was used the lesser alternative rates of 25 per cent applicable to long term capital gains under section 117 (c) of the Internal Revenue Code.

The gains reported by petitioner for 1943, 1944, and 1945 as long term capital gains were from the sale of property acquired and held by it for more than six months, primarily for the production of rental income.

The Commissioner in determining the deficiencies held the petitioner was a dealer in the business of selling slot machines and phonographs and that the gains realized were ordinary income, includible in its declared value excess profits tax net income and excess profits net income. In other words, respondent contends that petitioner is not entitled to treat the receipts involved as capital gain within the meaning of section 117 (j) of the code[1] because the machines sold were

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

\* \* \* \* \* \* \*

(j) GAINS AND LOSSES FROM INVOLUNTARY CONVERSION AND FROM THE SALE OR EXCHANGE OF CERTAIN PROPERTY USED IN THE TRADE OR BUSINESS.—

(1) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (l), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Such term also includes timber with respect to which subsection (k) (1) or (2) is applicable.

(2) GENERAL RULE.—If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business, plus the recognized gains from the

held primarily for sale to customers in the ordinary course of petitioner's trade or business. He states that:

> * * * when petitioner, beginning with the year 1943, actively commenced the purchase of machines throughout Nevada and surrounding area for the purpose of resale, brought such purchased machines back to its place of business, and then sold some of the machines and used some of the machines to replace less desirable machines carried in its rental string, which replaced machines were then included_with the machines originally purchased for resale and offered for sale to customers, said replaced machines no longer are entitled to the benefits of section 117 (j) but become identified with and a part of the machines held primarily for sale to customers in the ordinary course of the business of selling used slot machines.

Petitioner's position is that "The record  *  *  *  establishes affirmatively that petitioner's coin operated machines were held primarily to produce rental income and not for sale." Hence, it concludes that machines held over six months and which were sold constituted property used in a trade or business of a character covered by section 117 (j) (1), *supra*, and that gain from the sale of those machines was properly treated in its tax returns as capital gain, as provided in section 117 (j) (2), *supra*.

If petitioner prevails, the respondent erred in including the gain from the slot machines and phonographs involved in petitioner's excess profits net income and declared value excess profits tax net income. Secs. 711 (a) (1) (B) and 602, I. R. C.

Petitioner stated on brief that:

> * * * There is no issue whatever between the parties as to the gains on such machines as were acquired and held by the taxpayer for purposes of resale to service clubs, army and navy agencies, or other purchasers. The full amount of gains realized from sales in this latter category was included in the gross income of the taxpayer for the years in question  *  *  *

Respondent does not dispute that statement; therefore, we have to determine only whether the gains from the sales of older and obsolete machines purchased over a number of years and held for rental purposes were taxable as long term capital gains within section 117.

We think, in view of *Nelson A. Farry*, 13 T. C. 8, that petitioner must prevail. The taxpayer in that case was in the insurance and real

---

compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. For the purposes of this paragraph:

(A) In determining under this paragraph whether gains exceed losses, the gains and losses described therein shall be included only if and to the extent taken into account in computing net income, except that subsections (b) and (d) shall not apply.

(B) Losses upon the destruction, in whole or in part, theft or seizure, or requisition or condemnation of property used in the trade or business or capital assets held for more than 6 months shall be considered losses from a compulsory or involuntary conversion.

estate business. He constructed residences on certain subdivisions which he developed. In the taxable years there involved he sold some of those at a profit, which he returned as ordinary income. During the course of the years he also acquired other properties, not located in the subdivisions, primarily for rental purposes. He sold some of those properties during the year involved and reported the resultant gains as capital gains within section 117. The respondent there, as here, contended that such gains were taxable as ordinary income, determining that he held such property primarily for sale to customers in the ordinary course of his business. We held that the respondent's determination was error, stating, in part, as follows:

* * * However, it seems to us that petitioner has proved by overwhelming evidence that he purchased and held these rental properties primarily for investment purposes. The fact that in the taxable years he received satisfactory offers for some of them and sold them does not establish that he was holding them "primarily for sale to customers in the ordinary course of his trade or business." The evidence shows that he was holding them for investment purposes and not for sale as a dealer in real estate.

It will be noted in the findings of fact here that the major portion of the profit involved was derived from the sale of machines held for rental purposes several years prior to sale. During 1942, 1943, and 1944 it purchased more machines than ordinarily and it is stipulated that during the taxable years involved petitioner "deemed it advantageous to retain and use in its business the newest and most attractive machines so purchased * * * and to sell to service clubs the oldest machines previously used * * * in its regular operations." Its "regular operations," of course, consisted of renting those machines. It thus seems that the gains in issue were derived from sales of machines which were originally purchased and held for rental purposes only. As indicated in the *Farry* case, *supra*, the purpose for which the property is held is the controlling factor. And, since here the machines at the time of sale were held primarily for rental, the receipts in question are taxable in accordance with section 117, as petitioner contends. See also *Carl Marks & Co.*, 12 T. C. 1196, and *E. Everett Van Tuyl*, 12 T. C. 900.

The respondent, on brief, relies principally upon *Albright* v. *United States*, 76 Fed. Supp. 532. In that case the Federal District Court upheld the validity of respondent's rulings in I. T. 3666, 1944, C.B. 270, and I. T. 3712, 1945, C.B. 176. That case involved briefly, so far as pertinent here, the following facts. The taxpayer maintained a herd of dairy cattle. Calves which were not needed for the maintenance of the herd at the desired number were sold on the market and dairy cows which by reason of age, injury, or disease were unfit for maintenance in the dairy herd or which because of decreased milk production were economically less desirable than available young

stock, were sold and replaced by young stock raised by the taxpayer. The taxpayer treated the amounts received from the sale of cows removed from the dairy herd as capital gains and included only 50 per cent of those amounts in his computation of net income. The respondent determined, citing the above mentioned rulings, that the sales from the dairy herd were productive of ordinary income. The District Court, as respondent points out in his brief, held that the gain derived from the sale of those cattle from the dairy herd was taxable as ordinary income. However, the District Court was subsequently reversed by the United States Court of Appeals for the Eighth Circuit, 173 Fed. (2d) 339. The court stated in part as follows:

* * * Nothing in the language of the Act indicates an intention on the part of Congress to deny the relief granted by the section to any taxpayer whose transactions meet the prescribed conditions. The Commissioner has ruled that livestock held by a farmer for dairy, breeding, or draft purposes are, while so held and used, depreciable assets, not primarily held for sale to customers in the ordinary course of his business. Nothing in the language of the section justifies the inference that a farmer should be denied the right to treat the profits received from the sales of such livestock when they are no longer profitable or fit for use in the farmer's business as productive of capital gains and not of ordinary income. This, however, is the effect of the ruling relied on by the Government.

* * * A dairy farmer is not primarily engaged in the sale of beef cattle. His herd is not held primarily for sale in the ordinary course of his business. Such sales as he makes are incidental to his business and are required for its economical and successful management. The rulings relied on by the Government would place a penalty upon sound business practice or deny to the dairyman the benefits of section 117 (j). * * *

The court concluded that the interpretations of the respondent were contrary to the plain language of section 117 (j) and to the intent of Congress expressed in it.

We have followed the *Albright* case in *Isaac Emerson*, 12 T. C. 875, and *Fawn Lake Ranch Co.*, 12 T. C. 1022.

It follows that respondent erred in his determination.

*Decision will be entered under Rule 50.*