Mary Alice Browning v. Commissioner. Knox A. Browning v. Commissioner. Estate of M. M. Dawson, Deceased, Ruth B. Dawson and Richard M. Dawson, Executors v. Commissioner. Ruth Dawson v. Commissioner.
Browning v. Commissioner
Docket Nos. 20186, 20190, 20191, 20192, 21127, 21128, 21129, 21130.
United States Tax Court
1950 Tax Ct. Memo LEXIS 33; 9 T.C.M. (CCH) 1061; T.C.M. (RIA) 50285; November 27, 1950
J. M. McMillan, Esq., 2614 Gladstone Dr., Dallas, Tex., for the petitioners. D. Louis Bergeron, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined deficiencies in income tax for the years 1944 and 1945 in the following amounts: Docket
Defi-
No.
Petitioner
Year
ciency
20186
Mary Alice Browning
1944
$1,093.88
21128
1945
1,109.26
20190
Knox A. Browning
1944
1,093.88
21127
1945
1,075.68
20191
Estate of M. M. Dawson
1944
1,155.24
21129
1945
931.08
20192
Ruth Dawson
1944
1,155.24
21130
1945
931.08
*34 The proceedings were consolidated for hearing. The first and principal issue is whether the gains realized by F. C. Crane Company, a partnership, in the fiscal years ended January 31, 1944, and January 31, 1945, from the sale of certain equipment were capital gains under section 117(j), Internal Revenue Code, or ordinary income. The second issue, arising only in the event it is held that such gains were capital gains, is whether interest and "rentals" received in the year of sale on such of the above equipment as was sold under "rental agreements with recapture provisions" are properly includible in the sales price of such equipment in computing the capital gains. The third issue, also arising only in the event it is held that such gains were capital gains, is whether "rentals" received in the year of sale on such of the above equipment as was sold under "rental agreements with options to purchase" are properly includible in the sales price of such equipment in computing the capital gains. Findings of Fact Knox A. Browning and Mary Alice Browning, husband and wife, were residents of Dallas, Texas, and filed their returns for the years herein involved *35 with the collector of internal revenue for the second collection district of Texas. M. M. Dawson and Ruth Dawson, husband and wife, were also, until his demise in 1947, residents of Dallas, Texas, and filed their returns for the years herein involved with the collector of internal revenue for the second collection district of Texas. M. M. Dawson and Knox A. Browning were equal partners in F. C. Crane Company, (hereinafter referred to as the partnership), which was organized on or about April 1, 1937, to succeed to a corporation of the same name organized in 1926, and which continued through the years 1944 and 1945, the years involved in these proceedings. The income tax returns of the partnership were filed with the collector of internal revenue for the second collection district of Texas for the fiscal years ended January 31, 1944, and January 31, 1945. Its principal place of business was located in Dallas. Since its inception the partnership has both sold and rented heavy machinery and equipment consisting of bulldozers, cranes, graders, pneumatic tools, and other equipment used by contractors. The partnership income tax returns for the below fiscal years, as broken down by respondent's *36 agent in Dallas, disclosed the following: Fiscal
Gross
Rental
Year Ended
Sales
Income
3/31/41
$199,952.53
$196,891.36
1/ 1/42
317,129.80
230,614.64
1/ 1/43
320,883.45
319,772.25
1/ 1/44
210,503.09
108,765.18
1/ 1/45
175,184.89
81,220.66
The partnership kept its books and filed its returns on the accrual basis of accounting, using inventories in arriving at its gross profit. Rental machines were listed from March 1, 1941, through August 9, 1947, in a separate inventory styled on the books "Rental Equipment - Depreciable" account. Also each rental machine was set up on a separate ledger sheet, showing date acquired, cost, to whom rented, rentals received, depreciation, date sold and the sale price in case it was sold. The partnership from 1941 through 1945 claimed and was allowed depreciation on the economic life of said equipment at accelerated rates. This inventory - less depreciation - was labeled on the balance sheets in 1941, 1943, 1944 and 1945 (fiscal years) as "Equipment held for resale and/or rental" or "Equipment for resale and/or rental." Another inventory on the balance sheets in these years was labeled "Merchandise and raw materials. *37 " The balance sheets for 1941 and 1943 were prepared by an auditing firm and for 1944 and 1945 by the partnership's bookkeeper. The partnership's "Rental Equipment - Depreciable" account showed the following balances in 1944 and 1945: January 31, 1944
$176,960.87
January 31, 1945
140,943.00
The partnership's balance sheets in 1944 and 1945 showed the following assets, among others: Inventories
1/31/44
Merchandise and Raw Materials - at
Cost
$26,087.31
Equipment held for Resale and/or
Rental (at cost less reserve of
$126,302.37)
50,667.50
Inventories
1/31/45
Merchandise and Raw Materials - at
Cost
$26,869.63
Equipment for Resale and/or Rental
(at cost less reserve of $99,399.16)
41,552.84
The partnership's returns for 1944 and 1945 showed the following items under "Schedule E - Depreciation": Kind of Property
Cost
Year Ended
Rental Equipment
$176,960.87
1/31/44
Rental Equipment
140,952.00
1/31/45
The partnership held its rental equipment primarily for rental purposes. The partnership considered it more profitable to rent than to sell. Also, it was difficult to replace equipment sold during the years *38 in question. The rental equipment sold chiefly consisted of equipment that had seen much service. The equipment when rented would be taken away from the partnership's place of business to locations all over the country. During the fiscal years ended January 31, 1944, and January 31, 1945, the partnership sold, respectively, 24 and 32 pieces of rental equipment held for more than six months. These machines had been rented a total of 218 times. These sales consisted of three kinds: (1) Outright sales. (2) Sales under oral or written equipment rental agreements with options to purchase. (3) Sales under written equipment rental agreements with recapture provisions. Details of such sales are as follows: Year Ended 1-31-1944
Outright sales of machines - held more than 6 months
No rentals or option price involved
Reserve for Depreciation
Mch. No.
Cost
First
Current
End
Unrecovered
No.
of Year
Year
of Year
Cost
Times
Additions
Leased
4
$ 2,968.34
$ 2,750.55
$ 2,750.55
$ 217.79
7
28
5,714.16
2,433.80
$1,898.44
4,332.24
1,381.92
1
49A
825.36
206.34
206.34
412.68
412.68
287A
3,672.00
3,160.00
612.00
3,672.00
13
287B
3,672.00
3,264.00
408.00
3,672.00
8
294A
1,409.24
851.42
117.42
968.84
440.40
299A
2,500.00
416.67
1,250.04
1,666.71
833.29
5
353
170.00
141.67
28.33
170.00
8
356
170.00
141.67
28.33
170.00
8
377
152.00
38.00
38.00
114.00
387
161.50
40.38
40.38
121.12
388
161.50
40.38
40.38
121.12
450
1.00
1.00
10
$21,577.10
$13,346.88
$4,586.90
$17,933.78
$3,643.32
60
*39 Year Ended 1-31-1944
Outright sales of machines - held more than 6 months
No rentals or option price involved
Reserve for Depreciation
Rental
Gain or
Equipment
Loss
Mch. No.
Sales
on Sales
4
$ 2,500.00
$ 2,282.21
28
6,451.60
5,069.68
49A
1,013.56
600.88
287A
4,000.00
4,000.00
287B
4,000.00
4,000.00
294A
1,631.81
1,191.41
299A
1,300.00
466.71
353
150.00
150.00
356
150.00
150.00
377
180.50
66.50
387
180.50
59.38
388
180.50
59.38
450
182.75
181.75
$21,921.22
$18,277.90
These machines were held an average of over two years apiece. Year Ended 1-31-1944 Sales under Equipment Rental Agreements - held more than six months Reserve for Depreciation
Amount of
First
Current Year
End of
Unrecovered
Purchase
Mch. No.
Cost
of Year
Additions
Year
Cost
Option
96
$2,088.00
$ 348.00
$348.00
$ 686.00
$1,392.00
122
302.18
219.70
25.23
244.93
57.25
$ 441.95
129
479.58
289.75
79.92
269.67
109.91
599.20
319
136.66
136.66
136.66
457
1.00
1.00
348
31.00
7.75
7.74
15.49
15.51
350
1.00
1.00
458
1.00
1.00
460
80.00
71.11
3.33
74.44
5.56
586A
228.75
114.38
19.06
133.44
95.31
355
170.00
141.67
28.33
170.00
$3,519.17
$1,329.02
$511.61
$1,840.63
$1,678.54
$1,041.15
*40 Note: Machines numbered 96, 319, 457, 348, 350, 458, 460, 355 sold under oral equipment rental agreements with options to purchase. Machines numbered 122, 129, 586A sold under written equipment rental agreements with recapture provisions. Rent Received on Contract
Final Billing
Mch. No.
Total
Total
Rent
1% Per
No.
Rental
for Prior
Taxable
Month
Times
Equipment
Year
Year
Leased
Sales
96
$1,470.00
$1,140.00
$ 90.00
1
122
400.00
41.95
41.95
$24.31
9
129
400.00
199.20
39.20
41.94
4
319
35.00
90.00
20.00
7
457
35.00
90.00
20.00
7
348
60.00
30.00
2
$101.50
350
35.00
35.00
5
135.00
458
175.00
7.50
7.50
8
460
175.00
7.50
7.50
6
586A
250.00
52.50
52.50
1
355
70.00
35.00
4
100.00
$2,940.00
$1,793.65
$378.65
$66.25
54
$336.50
Profit & Loss Accounts
On
Mch. No.
Sales
Rentals
Int.
96
($1,392.00)
$1,140.00
122
( 57.25)
41.95
$24.31
129
( 109.91)
199.20
41.94
319
90.00
457
( 1.00)
90.00
348
85.99
60.00
350
134.00
35.00
458
( 1.00)
7.50
460
( 5.56)
7.50
586A
( 95.31)
52.50
355
100.00
70.00
($1,342.04)
$1,793.65
$66.25
*41 Year Ended 1-31-1945 Outright sales of machines - held more than six months No rentals or option price involved Reserve for Depreciation
Mach. No.
Cost
First
Current
End of
Unrecovered
No. of
of Year
Year
Year
Cost
Times
Additions
Leased
49B
$ 804.69
$ 804.69
180
5,000.00
$ 1,874.98
$ 729.12
$ 2,604.10
2,395.90
2
174
5,000.00
5,000.00
5,000.00
10
296A
1,450.19
550.68
140.98
691.66
758.53
9
532
361.00
361.00
361.00
168
5,327.64
5,327.64
5,327.64
7
297
4,612.00
1,152.99
640.50
1,793.49
2,818.51
3
487
182.75
182.75
0
517A
345.96
115.27
72.00
187.27
158.69
1
482
106.25
106.25
0
97
1,432.17
79.56
79.56
1,352.61
1
179
7,265.28
3,632.64
454.08
4,086.72
3,178.56
1
279
1,055.28
1,055.28
1,055.28
8
33A
126.20
63.10
63.10
63.10
0
384
170.00
42.50
42.50
127.50
0
385
170.00
42.50
42.50
127.50
0
386
170.00
42.50
42.50
127.50
0
169
7,623.24
7,623.24
7,623.24
10
266
2,213.07
2,213.07
2,213.07
12
291
4,443.00
4,443.00
4,443.00
10
$47,858.72
$33,619.95
$2,036.68
$35,656.63
$12,202.09
74
*42 Reserve for Depreciation
Rental
Gain
Equipment
or Loss
Mach. No.
Sales
on Sales
49B
$ 833.69
$ 29.00
180
5,230.00
2,834.10
174
4,452.67
4,452.67
296A
2,226.33
1,467.80
532
Junked
168
5,004.49
5,004.49
297
3,745.51
927.00
487
193.50
10.75
517A
294.07
135.38
482
112.50
6.25
97
1,516.92
164.31
149
6,205.00
3,026.44
279
1,093.00
1,093.00
33A
25.00
(38.10)
384
200.00
72.50
385
200.00
72.50
386
200.00
72.50
169
6,732.00
6,732.00
266
2,357.00
2,357.00
291
4,143.75
4,143.75
$44,765.43
$32,563.34
These machines were held an average of 2 1/2 years apiece. Year Ended 1-31-1945 Sales under Equipment Rental Agreements - Held more than six months Reserve for Depreciation
Amount of
First
Current Year
Unrecovered
Purchase
Mach. No.
Cost
of Year
Additions
End of Year
Cost
Option
131
$ 162.19
$ 28.68
$ 28.68
$ 133.51
464
182.75
182.75
182.75
132
497.17
96.67
96.67
400.50
473
172.00
43.00
35.85
78.85
93.15
215.00
475
182.75
45.69
38.05
83.74
99.01
215.00
483
106.25
13.26
13.26
92.99
484
106.25
17.68
17.68
88.57
125.00
485
106.25
17.68
17.68
88.57
125.00
538
28.32
5.70
5.70
22.62
474
182.75
45.69
38.05
83.74
99.01
215.00
68
2,500.00
2,500.00
2,500.00
486
182.75
38.05
38.05
144.70
215.00
$4,409.43
$2,822.83
$323.97
$3,146.80
$1,262.63
$1,110.00
*43 Note: Machines numbered 473, 475, 484, 485, 474, 486 sold under written equipment rental agreements with options to purchase. Machines numbered 131, 464, 132, 483, 538, 68 sold under oral equipment rental agreements with options to purchase. Rent Received on Contract
Final Billing
Rental
Profit and Loss Accounts
No.
Equip-
Mach.
Total for
Total Tax-
1% Per
Times
ment
Rental
No.
Prior Years
able Year
Rent
Month
Leased
Sales
Sales
Interest
131
$ 228.19
$ 28.19
1
($ 133.51)
$ 228.19
464
210.00
35.00
6
210.00
132
700.00
140.00
1
( 400.50)
700.00
473
215.00
40.00
1
( 93.15)
215.00
475
215.00
40.00
1
( 99.01)
215.00
483
125.00
35.00
1
( 92.99)
125.00
484
125.00
5.00
1
( 88.57)
125.00
485
125.00
5.00
1
( 88.57)
125.00
538
67.96
7.96
( 22.62)
67.96
474
215.00
40.00
1
( 99.01)
215.00
68
$2,880.00
120.00
120.00
15
120.00
486
215.00
123.45
1
( 144.70)
215.00
$2,880.00
$2,561.15
$619.60
30
($1,262.63)
$2,561.15
The written equipment rental agreements *44 with options to purchase provided in part: "Option to Purchase. - If all rentals shall have been paid when due and if all provisions of this contract shall have been complied with by the Lessee, then Lessee shall, in consideration thereof, have the privilege of purchasing above described equipment at the values hereinbefore named subject to all terms and conditions of Lessor's Sales Agreement, Form #1001, which is hereby referred to and made a part hereof as if fully copied herein, and if Lessee shall elect to purchase the machine he shall notify Lessor in writing of his intention so to do and upon receipt of such notice, provided all back rentals have been paid and all the terms of the rental contract complied with, the relation between the parties shall be governed from then on by Lessor's Sales Agreement, Form #1001, just as if such instrument had been actually executed by the parties, the consideration for such sale being the value of the equipment hereinbefore stated, such value being credited with of all rentals theretofore paid in cash to the Lessor, after first deducting % interest on the balance due on the equipment, computed proportionately as rentals shall have been paid. *45 In event Lessee does exercise option to purchase, balance due after crediting rentals as aforementioned shall be paid in cash or on terms satisfactory to the Lessor but no bill of sale shall be delivered by the Lessor until the total consideration has been fully paid in cash. As security for payment of all sums which are or may be owing hereunder, Lessee hereby assigns and transfers to Lessor all sums now or hereafter owing for work done, in whole or in part, with the equipment above described. * * *
"10. Title. - Title to the equipment shall at all times vest in the Lessor unless transferred to Lessee through sale. Lessee agrees to keep prominently displayed on such machine at all times 'This machine is the property of F. C. Crane Company, at Dallas, Texas, and is being operated by as Lessee'." The partnership also made oral agreements of the same type with the lessees of some of the equipment, as indicated in the preceding tables. The equipment rental agreements with recapture provisions provided in part: "ARTICLE V "A. The Lessor shall be paid at the rate prescribed in Schedule 'A' attached hereto and made a part thereof. The rental period shall begin on the delivery *46 of such equipment to a common carrier for shipment to the site of the work, as evidenced by bill of lading covering such shipment or other evidence satisfactory to the Contracting Officer, and shall terminate, unless title to the equipment passes to the Government at an earlier date, as provided for hereinafter in Article VII, * * *. * * *
"ARTICLE VII "When and if the total rental paid to the Lessor for any piece of equipment shall equal the value thereof, as specified in appendix 'A' plus one per cent per month for each month or fraction thereof such piece of equipment shall have been in use, no further rental shall be paid to the Lessor and title to the equipment shall vest in the Government, the Lessor delivering to the Government free of any and all liens and encumbrances title to such piece of equipment. At any time up to and including the time of actual completion of the work being performed under the principal contract the Government may at its option purchase any piece of equipment by paying the Lessor the difference between the valuation of such piece of equipment plus one per cent per month for each month or part thereof such piece of equipment shall have been in *47 use and the total rental therefore paid for such piece of equipment, provided that if such payment is made by the Government, the Lessor shall deliver to the Government, free of any and all liens and encumbrances, title to such piece of equipment." Both the "recapture" type and the "option to purchase" type of agreements provided that the rentals were for the "use" of the equipment. In its returns for the fiscal years and period ended March 31, 1941, January 31, 1942, January 31, 1943, and January 31, 1944, the partnership reported income from the sale of equipment, rental income, and gain realized from the sale of used equipment as ordinary income. The internal revenue agent in charge accepted as filed the returns for the fiscal years and period ended March 31, 1941, January 31, 1942, and January 31, 1943. In its return for the fiscal year ended January 31, 1945, the partnership reported income from the sale of equipment, rental income, and part of the gain realized from the sale of used equipment as ordinary income. In addition the partnership claimed net longterm capital gains on 19 pieces of equipment, computed as follows: Sales Price
$44,844.53
Cost
$47,431.72
Less Depreciation
35,295.63
12,136.09
Gain Realized
$32,708.44
50% Taxable (Per Return)
16,354.19
*48 Respondent determined deficiencies for petitioners for the years 1944 and 1945. The deficiencies for 1944 resulted from salary and interest adjustments by respondent not here in dispute. However, in their petitions petitioners raise the issues for 1944 to be determined in these proceedings. The deficiencies for 1945 resulted from adjustments by respondent not here in dispute and from his determination that the above claimed longterm capital gains on the sale of rental equipment constituted ordinary income. Petitioners dispute this latter determination and, in addition, claim long-term capital gains on the other sales of rental equipment in the partnership fiscal year ended January 31, 1945, and raise the other issues for 1945 to be determined in these proceedings. Opinion Petitioners maintain that the profits from the sales of certain contractors' equipment held for more than six months, which sales are set forth in our findings, are taxable under section 117(j), [1] Internal Revenue Code, as long-term capital gains. Respondent, however, contends that such sales were of property held primarily for sale to customers in the ordinary course of business and *49 that the profits therefore constitute ordinary income under section 22(a), [2] of the Code. *50 We think the facts clearly support petitioners on this question. The pieces of equipment here involved were held primarily for rent, not for sale. The 56 items sold during the taxable years 1944 and 1945, the years at issue, had been rented, as the facts show, a total of 218 times. Some items had been rented as many as 10, 12 and 13 separate times. The fact that these 56 pieces of equipment were eventually sold after much service does not militate against our conclusion that they were held primarily for rental purposes. Nor does the fact that the partnership was also in the business of selling such equipment and that its gross sales exceeded its rental income during the years here involved. As said in Nelson A. Farry, 13 T.C. 8, "a dealer can also be an investor." See also, A. Benetti Novelty Co., Inc., 13 T.C. 1072; Carl Marks & Co., 12 T.C. 1196; E. Everett Van Tuyl, 12 T.C. 900. Respondent places considerable emphasis upon the fact that the partnership's balance sheets in the 1941, 1943, 1944 and 1945 fiscal years included the equipment which it rented out under an inventory labeled "Equipment held for resale and/or rental" *51 or "Equipment for resale and/or rental". Respondent argues that the partnership thus made no segregation of such equipment from equipment in its merchandise inventory for sale to customers in the ordinary course of business. However, the balance sheets in those years also show another and separate inventory labeled "Merchandise and raw materials." The designation of an inventory of "Equipment held for resale and/or rental" was perhaps unfortunate in view of petitioners' assertion that its rental equipment was not held primarily for sale but for rent. But that designation appears only on the balance sheets, not elsewhere in the books. The books designate the same account as "Rental Equipment-Depreciable." Also, each rental machine was set up on a separate ledger sheet. Moreover, the designation "Equipment held for resale and/or rental" first appeared in a balance sheet prepared by auditors for the 1941 fiscal year, before the necessity for a distinction between property held primarily for sale in the ordinary course of business and other property used in the trade or business had arisen under section 117(j) (added to the Code by section 151(b) and section 101 of the Revenue Act of 1942), *52 and the designation was merely repeated thereafter. Finally, the test of whether property used in the trade or business does or does not come within the coverage of section 117(j) is, under that section, not whether or not the property is included in inventory by the taxpayer, but whether or not it is "properly includible" in inventory. It is our holding that the equipment herein at issue was not properly so includible and that therefore the profits of the partnership in the fiscal years ended January 31, 1944, and January 31, 1945, from the sales of rental equipment set forth in our findings constitute capital gains under section 117(j), not ordinary income, to petitioners in 1944 and 1945. The second and third issues herein arise from the contention of petitioners that if this Court decides, as we do, that the profits from the above sales were capital gains, then where the sale was made under a rental agreement with an option to purchase or a rental agreement with a recapture provision, the rentals and interest paid thereunder in the year of sale are includible in the sales price. The partnership has consistently reported all rentals. prior to the year of sale as ordinary income. *53 Respondent maintains that all of the proceeds received prior to the final billing and transfer of title to the purchaser constitute ordinary income, even in the year of sale. As was said in Chicago Stoker Corp., 14 T.C. 441: "Cases like this, where payments at the time they are made have dual potentialities, i.e., they may turn out to be payments of purchase price or rent for the use of property, have always been difficult to catalogue for income tax purposes. * * *" However, that case stated the rule to be, following Judson Mills, 11 T.C. 25, and Truman Bowen, 12 T.C. 446, that if the payments are large enough to exceed the depreciation of the property and thus give the payor an equity in the property, the payments should be regarded as purchase price. Here in all cases of equipment sold under rental agreements with options to purchase or with recapture provisions the rental payments exceeded the depreciation, as may be seen from the tables in our findings. Therefore, under the above rule the payors acquired an equity in the properties and the payments in the years of sale, the years before us, should be regarded as part of sales price, *54 not as rental income. To be sure, the payments on these properties in the years prior to the year of sale were reported by the partnership as rental income. But the prior years are not before us and each year of accounting must stand by itself. Burnet v. Sanford & Brooks Co., 282 U.S. 359. The 1 per cent interest payments included in the final billing on the equipment sold under rental agreements with recapture provisions also, of course, constitute part of sales price. Truman Bowen, supra.
Decisions will be entered under Rule 50. Footnotes
1. SEC. 117. CAPITAL GAINS AND LOSSES. * * *
(j) Gains and Losses from Involuntary Conversion and from the Sale or Exchange of Certain Property Used in the Trade or Business. - (1) Definition of Property Used in the Trade or Business. - For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(1), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Such term also includes timber with respect to which subsection (k)(1) or (2) is applicable. (2) General Rule. - If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. * * * ↩
2. SEC. 22. GROSS INCOME. (a) General Definition. - "Gross income" includes gains, profits, * * *↩