OPINION. Hill, Judge: The question for our determination is whether the seventeen Chevrolet cars held by the petitioner were property used in its trade or business of a character defined in section 117 (j) of the Internal Revenue Code, which is-subject to the amounts for depreciation provided in section 23 (1), or whether as maintained by the respondent they fall within the exceptions contained in section 117 (j) as either (a) property of a kind which would be properly includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (b) property held by the taxpayer primarily for sale to customers in the ordinary course of its trade or business. Property of the kind sold by a taxpayer in his normal trade or business has been considered entitled to section 117 (j) benefits when used in the trade or business of the taxpayer in the following cases: securities, Carl Marks & Co., 12 T. C. 1196; livestock, United States v. Bennett, 186 F. 2d 407; housing, Nelson A. Farry, 13 T. C. 8; slot machines, A. Benetti Novelty Co., 13 T. C. 1072. These cases point out that it is not the nature of the property itself which is determinative of this case but rather the purpose for which the property is held. Sixteen of the seventeen cars here in controversy were purchased new from the Chevrolet Division of General Motors under the so called floor plan of financing provided by G. M. A. C., as were all new Chevrolet cars acquired by the petitioner. The cars in issue were entered on the petitioner’s books according to the General Motors system of accounting in Account No. 231 — “New Cars Available for Sale,” All cars and trucks obtained from General Motors are as a matter of original entry charged into this account on the purchase journal. The system requires this. However, since the cars were placed in company use immediately after acquisition, they never appeared in Account No. 231 in the general ledger of the petitioner’s books. An entry was made on the journal taking them out of Account No. 231 and charging them to Account No. 230 — “Company Cars” before the postings to the general ledger accounts were made. Shortly after the acquisition the petitioner paid cash in full for the cars, insured them for its exclusive benefit, and purchased Tennessee license tags for the cars. Thereafter, they were used by the petitioner in its trade or business for the purposes outlined in our findings of fact. Once the petitioner had purchased the cars for its use and paid for them, the record shows that neither General Motors nor General Motors Acceptance Corporation, through which the petitioner secured its financing, placed any restrictions upon the petitioner’s use of the automobiles. They were the petitioner’s property and, as the respondent admits upon brief, the petitioner had a free hand as to how they should be used. Respondent points to the fact that these automobiles were acquired new, that petitioner’s-business was the sale of new cars, that the petitioner maintained a new car inventory and held cars for sale to customers in the ordinary course of its business, and draws the conclusion that the petitioner’s intention was to hold the cars here in controversy as “demonstrators” for a period of temporary use and then sell them. From this, respondent reasons that the cars in controversy, including the 1941 model Chevrolet which he admits was not purchased new, never lost their inventory character and remained, even after the 8,000 or 12,000 miles of business use to which they were put by the petitioner, cars properly includible in the inventory and held for sale to customers in the ordinary course of the business. The cars here were sold by the petitioner on the basis of usage when the cars had been used between 8,000 and 12,000 operative miles. The petitioner’s managers had them sold for the reasons, as they testified, that after this period of use operation and renovation costs increased and that it was more profitable in their business judgment to dispose of the cars before further usage. The respondent points to the fact that these cars were sold in the year after they ceased to be current models and argues that this points to an intention of the petitioner to hold the cars for such a temporary use so as not to affect the primary purpose for which they were purchased, that is, sale to customers in the ordinary course of the business. However, the evidence supports the petitioner. We are not in a position to substitute our business judgment for that of the petitioner’s managers, men who are apparently well versed in the subject of automobile repairs and sales. On the basis of the evidence as a whole, we conclude that the cars here in issue were held primarily for use in the petitioner’s trade or business and, hence, are entitled to capital gains treatment under the provisions of section 117 (j) of the Code and depreciation under section 23 (1). Decision will be entered for the petitioner.