Arthur L. FIELDS and Amy C.
Fields, Plaintiffs,

v.

Ralph C. GRANQUIST, Defendant.

Civ. No. 7593.

United States District Court
D. Oregon.

July 11, 1955.

Frank H. Spears, James D. Tredup and
Koerner, Young, McColloch & Dezen-
dorf, Portland, Or., for plaintiffs.

Clarence E. Luckey, U. S. Atty., Port-
land, Or., for the District of Oregon, and
Richard M. Roberts and Allen A. Bow-
den, Spe. Assts. to the Atty. Gen., for de-
fendant.

SOLOMON, District Judge.

Plaintiffs brought this action to re-
cover from the District Director of In-
ternal Revenue income tax deficiencies
which they claim were unlawfully as-
sessed and collected for the years 1948
and 1949.

Plaintiffs, a husband and wife partnership, operated the Fields Chevrolet Company and, as such, were engaged in the sale of new and used cars and trucks.

The evidence disclosed that during the calendar year 1948, they sold 1,430 new cars, 444 new trucks, 673 used cars, and 133 used trucks, or a total of 2,680 units. For that year, they reported the sum of $625,465.74 as their ordinary net income.

They also reported the sum of $15,-524.23 as a net long term capital gain. The great bulk of the amount so claimed resulted from the sale of 18 Chevrolet automobiles which they reported were used as demonstration and service cars. They took depreciation, and treated the profits on such 18 cars as long term capital gains.

During the calendar year 1949, the partnership sold 1,823 new cars, 426 new trucks, 894 used cars, and 143 used trucks, or a total of 3,286 units. For this year, they showed as their ordinary net income the sum of $430,882.28.

In their 1949 partnership return, they reported the sum of $19,227.95 as a net long term capital gain based upon the sale of an additional 18 Chevrolet automobiles, which they designated as demonstration and service cars.

The issues involved in this case are:

First, whether all or any of the demonstrator and service cars are subject to depreciation under the provisions of § 23(l) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23; and

Second, whether all or any portion of the profits reported as long term capital gains on the sale of all or any of these cars should have been reported as ordinary income.

Although the profit on a total of only 36 cars is involved in this case, the tax consequences to the partners are significant. If the profits on the sale of these cars are to be treated as long term capital gains in accordance with § 117(j) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 117, depreciation on each car is deducted from the cost thereof, and the difference between the cost as reduced by the depreciation and the selling price would be taxed at 25 per cent. If, however, the profit is treated as ordinary income, no depreciation is allowable, and these taxpayers, both of whom are in very high income brackets, would pay in excess of 90 per cent of such amount as taxes. In other words, the classification urged by the taxpayers would result in a tax savings to them of $25,-827.11.

Plaintiffs' witnesses testified that during the years 1948 and 1949 there was a great shortage of cars and that they had no difficulty in selling all of the Chevrolet automobiles and trucks allotted to them by the manufacturer. Plaintiffs merely allocated the cars among a long list of supplicants.

During the year 1948, in addition to the cars allocated to customers, the company assigned six new cars to salesmen (including Mr. Fields), designated in the returns as "demonstrators", and the company also assigned new cars to the general manager as well as to the managers of the Service, Parts, Sales, Used Car, Truck, and Office Departments, designated in the returns as "service cars". Similar allocations were made in 1949.

Plaintiffs' witnesses testified that new cars were so allocated for advertising purposes on the theory that even during periods when there was a critical shortage of new cars, it was bad publicity to permit Mr. Fields and key employees to drive anything but a current model Chevrolet.

They also testified that it was necessary to assign new cars to certain employees in order to induce them to accept and remain in the employ of the company. The witnesses frankly admitted that these cars when assigned were treated by the employees as their own and were used by them to go to and from work, in the evenings, on vacations, and generally for their own needs and pleasures. The use of such cars was regarded as part of the employees' compensation. The general manager testified that the use of a car to an employee was valued

at $75 per month. However, this "additional compensation" was not reported either by the partnership or by the employees in their tax returns.

The company also assigned three cars to two local high schools as part of the school system's driver-training program. This was done in connection with the company's advertising and good will promotion programs.

When these cars were operated from 5,000 to 13,000 miles, they were taken back, reconditioned, and sold to customers of the partnership at the regular retail list prices for new cars.

Plaintiffs contend that even though the cars were sold at the new car price, they are entitled to depreciation for the periods during which the cars were assigned either to themselves or to their employees or to the schools, and that the profits are to be treated as long term capital gains because during such periods (a) the cars were not being held by the partnership primarily for sale to customers in the ordinary course of their trade or business; (b) they were not properly includible in the inventory of the partnership; and (c) all of these cars were actually used for more than six months in connection with the trade and business of the partnership.

Although this method of classification did permit plaintiffs to be publicly generous to the schools, and did permit them to give their employees benefits in addition to regular compensation, without the payment by these employees of any income tax on this additional income, and even though such method permitted plaintiffs to reap a profit one thousand per cent greater than they would have received had plaintiffs immediately sold them at the regular list price for new cars, the Government conceded, as it must, that these cars were not deliberately used by the partnership to avoid taxes, for they represent only a small percentage of the total number of cars sold.

The evidence showed that General Motors Corporation supplies all of its distributors with an accounting manual and requires them to submit monthly reports. According to this system, Account 230, labelled "Company Cars", is the proper account into which demonstrators as well as cars assigned to executives are placed. The Government contends that dealers generally treat such cars as part of their inventories and that Chevrolet dealers are required to treat them in this manner. However, a representative of General Motors Corporation, who was the Government's own witness, testified that the use of such account numbers was not required by the manufacturer, and plaintiffs, as well as other dealers throughout the United States, carried these cars in Account 285, labelled "Service Cars," which is a fixed asset account. When these automobiles were sold, the gain was recorded on the books and reported to the manufacturer under Account 805, which is the account labelled "Other Income."

■ The fact that a manufacturer issues accounting manuals for its distributors and such manuals treat an asset as part of inventory rather than as a fixed asset, does not require that the asset be so classified by a court, even if the distributor was required by the manufacturer to use such classification.

In my view the nature of this asset is to be determined by all of the evidence and not merely by the method of segregation suggested by the manufacturer.

■■ The purpose for which an article is held determines whether it is entitled to capital gains treatment under § 117(j). The fact that the commodity is one normally carried for sale to customers does not prevent one or more units of that commodity from being held in connection with the company's trade or business. In other words, whether a particular car is a "demonstrator" and primarily held for sale to customers in the ordinary course of business or whether it is a "company" or "service" car, held primarily for use in the company's business, is a question of fact to be determined by all of the circumstances. Latimer-Looney Chevrolet, Inc., v. Commissioner of Internal Revenue, 1952,

19 T.C. 120; W. R. Stephens Co. v. Commissioner, 10 TCM 684, Aug. 8, 1951, affirmed 8 Cir., 199 F.2d 665; Carl Marks & Co., 12 T.C. 1196; Nelson A. Farry, 13 T.C. 8; McWilliams v. Goodwin, CCH 54-2 USTC ¶ 9514 (1954).

The revised ruling of the Commissioner, Rev.Rul. 54-222, C.B. 54-1, is to the same effect.

I, therefore, find:

■ (1) The 1948 pickup and the 1941 sedan are properly classifiable as service cars, and the amounts claimed for depreciation are correct, and the profits on such vehicles are entitled to capital gains treatment.

■ (2) The two 1948 and the one 1949 Chevrolet automobiles used as training cars by the high schools in connection with their driver-training programs were part of the advertising and good will promotion programs of the plaintiffs, and the amounts claimed both for depreciation and as long term capital gains are proper.

■ (3) The cars listed in the 1948 and 1949 partnership tax returns as demonstrators were demonstrators, and the Commissioner properly determined that the profits therefrom were part of the ordinary income of the partnership.

In spite of the fact that new cars were at a premium during this period, plaintiffs, as well as other retail automobile dealers throughout the United States, did engage in advertising programs and did demonstrate cars to the buying public.

On the basis of the evidence, I find that the Commissioner properly relied on the presumption that demonstrators are held for sale to customers in the ordinary course of the dealer's business and the Commissioner properly rejected plaintiff's request that the profits on these cars were entitled to capital gains treatment in accordance with § 117(j). There is no basis for the present attempt of the taxpayers to impeach their own returns.

■ (4) All of the remaining vehicles listed in the schedule attached to Para-

graph IX of the Pre-Trial Order are properly classifiable as "company" or "service" cars, and, therefore, subject to the code provisions on depreciation and long term capital gains.

Attorneys for plaintiffs shall make the necessary computations, prepare findings of fact, conclusions of law, and a judgment, all in accordance with this opinion.