MASSEY MOTORS, Inc., Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 3346-J.

United States District Court
S. D. Florida.

Oct. 7, 1957.

As Amended Nov. 6, 1957.

William R. Frazier, Hill & Frazier, Jacksonville, Fla., for plaintiff.

Edith House, Asst. U. S. Atty., Jacksonville, Fla., for defendant.

SIMPSON, District Judge.

This suit for the recovery of corporate income taxes and interest thereon was tried to the Court without a jury. From the pleadings, exhibit, testimony and argument and memorandum of counsel, the Court makes the following

Findings of Fact

1. Plaintiff is a corporation organized and existing under and by virtue of the laws of the State of Florida, with principal office at 830 Main Street, Jacksonville, Duval County, Florida.

2. This action is one to recover a corporate income tax and interest thereon erroneously or illegally assessed and collected without authority under the Internal Revenue Laws of the United States, pursuant to the authority conferred to sue under Section 1346(a)(1) of Title 28, United States Code, as amended.

3. That on or about May 12, 1951, plaintiff filed with and in the office of the then Collector of Internal Revenue for the District of Florida at Jacksonville, Florida, its corporate income tax return Form 1120 for the calendar year 1950 and duly paid to the said Collector, the corporate income tax shown on said return to be due and owing by the plaintiff to the United States Government; that on or about October 20, 1954, the Commissioner of Internal Revenue assessed additional corporate income tax and interest against the plaintiff as follows: Income tax in the amount of $3,012.99 and interest thereon in the

amount of $650.27; that this additional income tax and accrued interest thereon were paid by the plaintiff to the United States Government on the dates of October 20 and 27, 1954, in the aggregate amount of $3,663.26.

4. That on or about March 15, 1952, plaintiff filed with and in the office of the then Collector of Internal Revenue for the District of Florida at Jacksonville, Florida, its corporate income tax return form 1120 for the calendar year 1951 and duly paid to the said Collector the corporate income tax shown on said return to be due and owing by the plaintiff to the United States Government; and that on or about October 20, 1954, the Commissioner of Internal Revenue assessed additional income tax and interest thereon against the plaintiff as follows: Income tax in the amount of $4,918.46 and accrued interest in the amount of $766.40; that this additional tax and accrued interest thereon were paid by the plaintiff on October 20 and 27, 1954, in the aggregate amount of $5,684.86.

5. That on February 3, 1955, plaintiff filed a claim for refund in the amount of $3,663.26, plus interest, of the tax and interest paid for the calendar year 1950.

6. That on February 3, 1955, plaintiff filed a claim for refund in the amount of $5,684.86, plus interest, of the tax and interest paid for the calendar year 1951.

7. The said claims for refund were rejected by action of the Commissioner of Internal Revenue by letter dated July 18, 1955.

8. The plaintiff during the period herein involved operated under a franchise from Chrysler Corporation for the retail sale of Plymouth and Dodge automobiles and Dodge trucks, and as a wholesale distributor of these automotive products for Chrysler Corporation in Duval, Clay, Baker and Nassau Counties, Florida, and Camden and Charlton Counties, Georgia, all located in and around the Jacksonville, Florida trade area.

9. The plaintiff as a distributor for Chrysler Corporation appointed associate dealers in several of the counties included in its sales area. Under this arrangement the plaintiff purchased all merchandise from Chrysler Corporation, and it in turn sold the same to its associate dealers. During the calendar years 1950 and 1951, the petitioner had three associate dealers located in Green Cove Springs and MacClenny, Florida, and Kingsland, Georgia.

10. Under plaintiff's distributorship arrangement, Chrysler Corporation had no authority to sell merchandise directly to an associate dealer, nor did a representative of Chrysler Corporation have authority to call on an associate dealer without a member of the plaintiff's staff being with him. The plaintiff as the distributor also helped its associate dealers in sales promotion work in connection with the sale of Chrysler automobiles, trucks and parts. In general, the plaintiff supervised the operation of its associate dealers in much the same way that Chrysler Corporation supervised and directed its retail dealers.

11. During the years in question, the plaintiff employed between 85 and 120 persons. The principal office of the plaintiff was maintained at 830 Main Street, Jacksonville, Florida. Its servicing and parts department and body shop were located at 35 West State Street; the used car lots were located at 36 West State Street, 1248 Main Street, and 2131 West Beaver Street. A warehouse was located at 8941 Main Street, all at Jacksonville, Florida.

12. The plaintiff owned all of the outstanding stock in a subsidiary corporation known as Atlantic Motor Sales, Inc., located on the South side of the St. Johns River in Jacksonville, Florida, at 1524 San Marco Boulevard. The subsidiary corporation maintained a used car lot in the 2000 block of West Beaver Street and a used car lot on Miami Road, both in Jacksonville, Florida. The subsidiary corporation was also a direct dealer of

Chrysler Corporation and handled approximately the same products as those sold by the plaintiff.

13. For the taxable years involved, plaintiff and its wholly owned subsidiary, Atlantic Motor Sales, Inc., filed consolidated corporate income and excess profits tax returns.

14. The sources of plaintiff's income and gross profit of each of its departments for the calendar years 1950 and 1951 were as follows:

| Massey Motors, Inc. | 1950 | 1951 |
|---|---|---|
| New Car Department | $527,929.76 | $557,699.48 |
| Used Car Department | 154,221.60 | 179,117.47 |
| Stockroom (Parts) | 102,318.53 | 84,681.93 |
| Service | 122,443.49 | 122,383.12 |
| Total Gross Profit | $598,470.18 | $585,647.06 |
| Atlantic Motor Sales, Inc. | | |
| New Car Department | $231,632.17 | $310,407.59 |
| Used Car Department | 97,936.06 | 98,347.37 |
| Stockroom (Parts) | 18,592.85 | 22,980.82 |
| Service | 23,861.43 | 37,898.14 |
| Total Gross Profit | $176,150.39 | $272,939.18 |

15. During 1950, plaintiff's gross sales were $6,157,631.93, and in 1951 the gross sales were $7,601,985.35.

16. During the period here involved, the plaintiff and its wholly owned subsidiary, Atlantic Motor Sales, Inc. sold new and used cars and trucks as follows:

| Massey Motors, Inc. | 1950 | 1951 |
|---|---|---|
| New Dodge | 778 | 682 |
| New Plymouth | 424 | 428 |
| New Dodge Trucks | 373 | 590 |
| Used Units | 1510 | 1479 |
| Totals | 3085 | 3179 |
| Atlantic Motor Sales, Inc. | | |
| New Dodge | 280 | 306 |
| New Plymouth | 126 | 179 |
| New Dodge Trucks | 160 | 370 |
| Used Units | 548 | 1144 |
| Totals | 1114 | 1999 |

17. New cars held by the plaintiff for retail sales to customers were not driven at all by the plaintiff with the exception of driving necessary for the servicing and delivery of these cars to customers. The same was true with respect to used cars and trucks sold by the plaintiff in the regular course of business.

18. Plaintiff's new cars held for sale in the ordinary course of business were not registered in its name. Likewise, used cars were not registered in the petitioner's name. Used cars were generally titled or registered in the name of the previous owner, who upon trading his car would assign his registration certificate in blank. When plaintiff sold these units, they were re-registered in the name of the new owner by the office of the Florida Motor Vehicle Commissioner.

19. All cars and trucks obtained by plaintiff from Chrysler Corporation as a matter of original entry are charged into Account No. 131 on its ledger. When cars or trucks were placed in company use, an entry was made whereby the vehicles were removed from Account No. 131 and placed into the company car account which was designated on plaintiff's

accounting system as Account No. 167. Account No. 131 is the inventory account. Account No. 167 is a fixed asset account. (As amended.)

20. The plaintiff depreciated its company cars on the straight line method, utilizing an estimated useful life of 36 months, which the Court finds to be a reasonable and fair rate.

21. During 1950, the plaintiff had 51 company cars in service, of which 23 were leased to Atlantic Discount Company, Inc. (Exhibit 3). During 1950, the plaintiff sold 27 of the 51 cars, 16 of which were held less than six months prior to date of sale and 11 of which were held for more than six months. (As amended.)

22. During 1951, the plaintiff had 53 cars in company service, of which 26 were leased to Atlantic Discount Company, Inc. (Exhibit 4.) Plaintiff sold 23 of these cars during 1951. (Capital gain has been allowed by the Commissioner of Internal Revenue as to two of these and are not here in issue.) Of the remaining 21 cars, 9 were held for less than six months prior to the date of sale and 12 were held more than six months. (As amended.)

23. The decision to place cars in company use was made by decision of plaintiff's top management. As a car was placed in company use, it was covered with fire, theft, comprehensive, public liability and property damage insurance for the exclusive benefit of the plaintiff. Regular license plates were procured for each such car in the plaintiff's name and the automobile was paid for in full in cash. Dealer tags were never used on any cars used for the company business.

24. The record discloses that the company cars in issue were used by the various officials of the plaintiff and its wholly owned subsidiary, Atlantic Motor Sales, Inc., in the general course of everyday business which included among other things traveling to and from the various locations maintained by both corporations. The cars were also used in making bank deposits, messenger service, trips to the post office, and for loan to customers needing transportation. The cars were also used to permit managers and other company personnel to travel for business purposes to cities such as Atlanta, Georgia, and Tampa, Florida, for new car showings and other types of factory meetings. The cars were also used by the plaintiff in its contact with its associate dealers, and for use in various civic functions, such as parades, etc. Plaintiff's business could not have been operated without the use of company cars.

The decision to sell the company cars was made by plaintiff's management on the economic facts of whether holding a car longer would appreciably reduce the sales price for it. The plaintiff followed the practice of disposing of all company and leased cars either immediately before or as soon after a model change as was practicable. Plaintiff's management deemed it advisable to have company personnel in current model company cars. Plaintiff also disposed of leased vehicles during the year if a particular unit had been run approximately 40,000 miles. Company cars were also removed from service when they had been run approximately 10,000 miles without regard to model change.

All of the cars in issue upon which long-term capital gains treatment was claimed were held for more than six months, and some were held more than one year.

■ 25. During the period involved, the plaintiff leased a number of cars to a corporation known as Atlantic Discount Company, Inc. at a net rental of 3¢ per mile, payable monthly. Atlantic Discount Company, Inc. was in the automobile finance business and the leased cars were used by its company personnel in the operation of this business. In 1950, 26 cars were leased, and in 1951, 23 cars were leased. The plaintiff received rental income in the respective amounts of $5,433.55 and $7,288.22 during 1950 and 1951 from Atlantic Discount Company under the lease arrangement.

26. Atlantic Discount Company, Inc. paid all costs of operating and maintain-

ing the leased vehicles including the cost of all necessary collision and public liability insurance.

27. During 1950 and 1951, plaintiff incurred expenses of maintenance and operating its company cars of approximately $5,000 to $6,000 annually. The said expenses were claimed by the plaintiff on its federal income tax returns as ordinary and necessary business expense deductions and the said deductions were allowed by the Commissioner of Internal Revenue. (As amended.)

28. In his opening statement, counsel for the plaintiff abandoned any issue with respect to the depreciation and capital gain on the sale of a total of 10 cars shown on Exhibits 3 and 4 to have been used by Mrs. W. W. Massey, the wife of plaintiff's president, and Bob Massey, his son, during the years 1950 and 1951. The Court finds that the vehicle listed in Exhibit 3 as Item 18 was likewise used by Mrs. Massey, and that therefore no depreciation is allowable with respect thereto. (As amended.)

29. In its return for the calendar year 1950, plaintiff deducted $9,346.69 as depreciation on all of its company cars, including those leased to Atlantic Discount Company, Inc. During the calendar year 1950, plaintiff sold 27 of the 51 company cars in use and under lease, of which 16 were held less than six months prior to the date of sale. Plaintiff reported a short-term capital gain in the amount of $10,247 with respect thereto. The remaining 11 cars were held more than six months, and plaintiff reported a long-term capital gain in the amount of $6,713.21 with respect thereto. In its return for the calendar year 1951, plaintiff deducted $11,572.45 as depreciation on its company cars, including those leased to Atlantic Discount Company, Inc. During the calendar year 1951, plaintiff sold 23 of the 53 cars in company use and under lease, of which 9 were held less than six months. Plaintiff reported a short-term capital gain in the amount of $6,760.41 with respect thereto. Of the remaining 14 cars depreciation and long-term capital gain treat-

ment has been allowed by the Commissioner of Internal Revenue as to 2 and they were not in issue. The remaining 12 cars sold were held more than six months prior to the date of sale, and plaintiff reported a long-term capital gain in the amount of $6,925.97 with respect thereto. All of these cars, with the exception of those mentioned in Paragraph 28 above, were used in plaintiff's trade or business, were not properly includable in plaintiff's inventory, and were not held primarily for sale in the ordinary course of its trade or business. (As amended.)

30. During the years 1950 and 1951, the plaintiff had a standard financing agreement with Atlantic Discount Company, Inc., whereby Massey Motors would sign a contract for the sale of a car for a customer desiring to finance a portion of the purchase price in which contract the finance charges were added and insurance costs. The plaintiff would then assign or discount this contract to Atlantic Discount Company, Inc. The finance company would then remit to the plaintiff its check for the cash price for the automobile as specified in the contract, exclusive of finance and insurance charges. The finance company would set up a reserve from the finance and insurance charges, which was not payable to the plaintiff until such time as each contract was paid in full by the purchase of the car involved.

31. Under the financing arrangement which plaintiff had with Atlantic Discount Company during 1951, the finance company held back from the plaintiff as a dealer reserve 5% of all retail contracts then outstanding.

32. The plaintiff was also under what is known as a recourse arrangement with Atlantic Discount Company, Inc. as a part of its financing agreement whereby plaintiff agreed to repurchase any car in the event of its repossession by the finance company for an amount equal to the unpaid balance due from the former owner or purchaser of the car. On the books of the finance company, the so-called holdbacks were shown as an ac-

count payable due plaintiff, and on plaintiff's books, it was carried as an account receivable from the finance company.

33. Plaintiff kept its books and records and files its corporate income tax returns for the period involved on the accrual basis.

34. Under the financing arrangement, Atlantic Discount Company would account to the plaintiff at the end of each January, July and October for any portion of the so-called finance holdback which might be due plaintiff. That is to say if in 1951, the holdback were in excess of 5% of the then total outstanding retail contracts purchased from plaintiff at the accounting date, the excess would be paid to plaintiff and the balance remaining in the reserve account would not be payable until each retail contract were paid in full.

35. Under the financing arrangement, Atlantic Discount Company, Inc. had the right to charge any losses on repossessions for which it was not otherwise reimbursed against the moneys held back or so-called dealer reserve.

36. The plaintiff in filing its tax return for 1951 accrued and carried into ordinary income all of the so-called finance reserve holdback being held by Atlantic Discount Company as of December 31, 1951, in the amount of $72,-584.95, except the sum of $2,177.54 which had been excluded and charged to an account No. 253–A entitled "reserve for repossessions".

### Conclusions of Law

1. The Court has jurisdiction of the parties and subject matter of this action. Title 28, U.S.C., Section 1340; Title 26, U.S.C., Section 3772.

2. The company cars involved in this proceeding, except those assigned to Mrs. W. W. Massey and Bob Massey, as shown by Exhibits 3 and 4, were bona fidely used in the operation of plaintiff's trade or business, were not properly includable in plaintiff's inventory, and were not held primarily for sale in the ordinary course of its trade or business under the provisions of Section 117(j) of the 1939 Code, 26 U.S.C.A. § 117(j). See United States v. Bennett, 5 Cir., 1951, 186 F.2d 407; Latimer-Looney Chevrolet Company, Inc. v. Commissioner, 1952, 19 T.C. 120; Arthur L. Fields v. Granquist, D.C.Or.1955, 134 F.Supp. 624; W. R. Stephens Co. v. Kelm, D.C.Minn. 1956, 140 F.Supp. 12.

3. The plaintiff is entitled to the depreciation claim on its company cars, with the exception of the cars mentioned in paragraph 2 above, in its 1950 and 1951 returns under Section 23(l) of the 1939 Code, 26 U.S.C.A. § 23(l).

4. All of the cars which were leased by plaintiff to Atlantic Discount Company, Inc. during the period involved constituted property used in plaintiff's trade or business, were not properly includable in plaintiff's inventory, and were not held primarily for sale in the ordinary course of its trade or business under the meaning of Section 117(j) of the Internal Revenue Code of 1939. See Philber Equipment Corporation v. Commissioner, 3 Cir., 1956, 237 F.2d 129.

5. The plaintiff is entitled to long-term capital gains treatment on the profits realized by it from the disposition of those company and leased cars in issue for 1950 and 1951 which had been held for more than six months at the date of sale under Sections 117(a) and 117(j) of the 1939 Code.

6. Plaintiff is entitled to exclude the amount of $2,177.54 from its taxable income for the year ended December 31, 1951, in connection with the dealer reserves withheld by Atlantic Discount Company. See Johnson v. Commissioner, 4 Cir., 1956, 233 F.2d 952 and Keasbey & Mattison Co. v. United States, 3 Cir., 1944, 141 F.2d 163. It appears from the record that the plaintiff could have excluded $72,584 from its taxable income at the end of 1951 under the authority of the Johnson and Keasbey & Mattison cases, but its failure to do so does not prevent the plaintiff from excluding the lesser sum of $2,177.54 as it did in filing its 1951 return.

7. The parties are directed to settle decree accordingly, the Court having been advised at the hearing that counsel had agreed to compute the amount of refund to which the plaintiff might be entitled and to submit same to the Court together with a proper form of judgment to be entered in this cause.