KERMIT M. DEHAAI and ELFRIEDA I. DEHAAI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
De Haai v. Commissioner
Docket No. 2084-88.
United States Tax Court
T.C. Memo 1989-127; 1989 Tax Ct. Memo LEXIS 127; 56 T.C.M. (CCH) 1549; T.C.M. (RIA) 89127; March 27, 1989. Paul H. Wieck II, for the petitioners. Matthew J. Fritz, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined deficiencies of $ 10,095.50, *128 $ 3,406.54 and $ 10,903.00 in petitioners' Federal income tax for the calendar years 1979, 1982 and 1983, respectively. After concessions, the issues for decision are: (1) whether respondent's motion under Rule 41(b)(1) [1] to amend his Answer to conform to the evidence presented at trial should be granted; and (2) whether two "self-propelled disks" invented and self-constructed by Petitioner Kermit M. DeHaai constitute inventory or depreciable property, and whether one of the self-propelled disks is eligible for the investment tax credit. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners timely filed joint Federal income tax returns for the calendar years 1979, 1982 and 1983 with the Internal Revenue Service Center in Kansas City, Missouri. On or about April 15, 1983, petitioners filed an amended joint Federal income tax return on Form 1040X claiming *129 a $ 10,095.50 carryback of unused investment tax credits from 1982 to 1979. This carryback represents the amount of deficiency at issue for the year 1979. At the time the petition in this case was filed, petitioners resided in Monroe, Iowa. Petitioner Kermit M. DeHaai (Mr. DeHaai) is an entrepreneur involved in farming, manufacturing and inventing. He has an eighth grade education. Mr. DeHaai farms the property on which his home is located and leases certain other properties to tenant-farmers. Since 1956, Mr. DeHaai has been engaged in the manufacture and sale of "earth anchors" through a partnership called Dehaai Manufacturing Company. In 1971, he began to manufacture and sell a product he designed and patented called a "Reel-Tite" as a sole proprietor under the trade name of Kermco Products. The Reel-Tite is a device used to tighten sagging barbed wire fence lines. In 1976, Mr. DeHaai came up with the idea for a farm implement called a "self-propelled disk." The primary purpose of a disk is to cultivate soil in order to prepare it for planting. However, a conventional disk must be propelled by a tractor whose wheels compact the soil. Compacting soil is obviously counterproductive *130 if the objective of using a disk in the first place is to cultivate. Compacted soil is a particularly severe problem when farming a kind of soil called "gumbo." Gumbo is a fine-grained silty soil which when wet becomes a heavy and sticky mud. The essence of Mr. DeHaai's idea was to merge the functional attributes of a tractor and a conventional disk. He did so by designing a single unit which, when in the field, could carry its wheels with the entire weight of the unit being transferred to powered disk blades. Petitioner contacted several farm equipment manufacturers with the hope of getting them involved in building the self-propelled disk. One engineer representing a major manufacturer advised Mr. DeHaai that his idea simply would not work, due largely to disk slippage which would prevent self-propulsion. Mr. DeHaai persevered, and in 1979 he began self-construction of a prototype of his invention with funds borrowed from a bank. The prototype was completed in the early to middle part of 1980, at a cost of $ 43,672.00 (Disk No. 1). Petitioners began depreciating Disk No. 1 over an eight year period beginning in 1979 through Kermco Products. Respondent disallowed such depreciation *131 deductions of $ 4,959.00 claimed by petitioners in each of the years 1982 and 1983. [2]
*132 After completion, Mr. DeHaai took Disk No. 1 to the Farm Progress Show in Nevada, Iowa, where it was the center of attention. Mr. DeHaai made no attempt to sell Disk No. 1 itself at the Farm Progress Show, or after the show through advertising or otherwise. Rather, he hoped to get a manufacturer to produce his invention. Disk No. 1 had performance problems and was probably itself not commercially viable. Further, the property farmed by Mr. DeHaai was hilly, and therefore not suitable for using Disk No. 1 which was designed for flat to rolling terrain. Accordingly, Disk No. 1 was strictly a prototype used solely to draw attention to Mr. DeHaai's inventive idea through demonstration. After the Farm Progress Show, Mr. DeHaai was contacted by a farmer who wanted to have a self-propelled disk built for him. Mr. DeHaai saw this as an opportunity to refine the design of Disk No. 1, and to build a commercially viable model which would capture the attention of the farm equipment manufacturers. On October 13, 1981, Mr. DeHaai entered into an agreement with the farmer to build a self-propelled disk for him at a total cost of $ 105,000.00 in four installments ending on March 1, 1982 (Disk *133 No. 2). In the agreement, Mr. DeHaai reserved the right to show and/or demonstrate Disk No. 2, and the parties further agreed that: (1) Mr. DeHaai would pay the buyer $ 1,000.00 for each self-propelled disk sold during the period March 1, 1982 through March 1, 1987; and (2) the buyer would pay Mr. DeHaai $ 60,000.00 in order to purchase a new self-propelled disk after sixty disks had been sold and paid for, and would return at such time the original disk purchased from Mr. DeHaai. After Disk No. 2 was about one-third complete, the buyer repudiated the agreement. Mr. DeHaai was faced with the choice of scrapping the work already done or completing construction himself. Mr. DeHaai decided to complete construction of Disk No. 2 far enough so that he could demonstrate it. Disk No. 2 was completed in the late spring or early summer of 1982 at a total cost of $ 100,955.00, financed entirely through a bank. Petitioners reported Disk No. 2 as a five year recovery property and claimed depreciation expense deductions of $ 15,143.00 and $ 22,210.10 in 1982 and 1983, respectively. These deductions were disallowed by respondent in their entirety. Respondent also disallowed a $ 10,095.50 *134 investment tax credit claimed on Disk No. 2 in 1982, which was, as discussed above, carried back by petitioners to 1979. Disk No. 2 received positive press in at least two farm industry trade journals. After completing Disk No. 2, Mr. DeHaai contacted a number of farm equipment manufacturers, including Vermeer Manufacturing, Farm Hand, Massey-Ferguson and John Deere. Mr. DeHaai's hope was that one of them would test Disk No. 2, get the "bugs" out of it, and then manufacture it. However, according to Mr. DeHaai, no manufacturers have been interested due to a severe downturn in the farm economy. OPINION The first issue for decision is whether we should grant respondent's motion to amend his Answer to conform to the evidence presented at trial (Motion). At the conclusion of trial, respondent advised the Court and petitioners of his intention to file the instant Motion, and the Court ordered respondent to file any such motion within 45 days. The Motion was timely filed and provides in pertinent part: 2. The issues for trial in this case, as framed in the notice of deficiency, in the previously filed pleadings, and in the parties' respective trial memoranda and opening statements, *135 were whether two farm implements invented by petitioner Kermit M. DeHaai were inventory, rather than business equipment, and thus not depreciable, and whether, for the same reason, one of the implements was not eligible for investment credit. 3. In the course of the trial, petitioners' counsel elicited from Mr. DeHaai testimony establishing (a) that neither piece of equipment had ever been completed prior to or during the years in question, and thus, either the machines constituted goods in process which were never placed in service in petitioners' manufacturing operation, or the expenses incurred in developing them constituted research and experimental expenditures not deductible in the years before the Court; and (b) that even if the older piece of equipment had been placed in service in a prior year, it had been removed from service and no longer was used in petitioner's [sic] trade or business during the years before the Court. [3]
*136 * * * In general, an issue not properly raised in the pleadings by the parties is not before the Court for decision. Frentz v. Commissioner,44 T.C. 485, 490-491 (1965), affd. without discussion on this point 375 F.2d 662 (6th Cir. 1967). However, Rule 41(b)(1) [4] provides a procedure whereby the pleadings may be amended to conform to the evidence presented at trial. Under this Rule, our consideration of respondent's Motion essentially boils down to deciding whether the alleged new issues were in fact "tried by the express or implied consent of the parties." In doing so, we are mindful of the rationale behind such an inquiry: The right to amend pleadings to conform to the proof proceeds upon the theory that by such amendment the pleadings are brought in line with the actual issues upon which the case was tried, even though such issues were not stated in the pleadings as originally drawn. [Goodwin v. Commissioner, a Memorandum Opinion of this Court dated October 9, 1944, citing Simms v. Andrews,118 F.2d 803 (10th Cir. 1941); 3 T.C.M. 1080, 1090; 13 P-H Memo T.C. par. 44,321, at 1156.] *137 At trial, we advised respondent that we did not think that the testimony presented supported his argument that new issues were consensually raised. Nevertheless, we withheld ruling on this matter pending review of the transcript of trial and respondent's Motion. Now, after further consideration, we are convinced that respondent's Motion should be denied. Respondent's memorandum in support of his Motion points to specific excerpts of Mr. DeHaai's direct testimony for the propositions that: (1) neither Disk No. 1 nor Disk No. 2 was ever completed and made operational by petitioners; and (2) that prior to 1982, Disk No. 1 was "broke down" and "in the shed" and no longer being used by petitioners. We disagree. As is often times repeated, statements must be interpreted within the context in which they are made. In actuality, Mr. DeHaai testified that both self-propelled disks were prototypes used for demonstration purposes which admittedly had design and operational problems affecting the commercial viability of the underlying inventive idea. Accordingly, petitioners did not expressly or impliedly try the new issues raised by respondent. The second and final issue for decision *138 is whether Disk No. 1 and Disk No. 2 constitute inventory or depreciable property, and whether petitioners are entitled to the investment tax credit claimed on Disk No. 2 in 1982 and carried back to 1979. Respondent determined: (1) that both Disk No. 1 and Disk No. 2 were items of inventory not qualifying for claimed depreciation expense deductions in 1982 and 1983; and (2) that Disk No. 2 did not qualify for the investment tax credit claimed in 1982 and carried-back to 1979. Respondent's determinations are presumptively correct, and petitioners bear the burden of proving that such determinations are in error. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Section 167(a) provides that a reasonable allowance for the exhaustion, wear and tear, and obsolescence of property used in the trade or business or of property held by the taxpayer for the production of income shall be allowed as a depreciation deduction. Sec. 1.167(a)-1(a), Income Tax Regs. The depreciation allowance does not apply to inventories, stock in trade or property held primarily for sale to customers in the ordinary course of business. Sec. 1.167(a)-2, Income Tax Regs.; Luhring Motor Co. v. Commissioner,42 T.C. 732, 751 (1964). *139 For property to be held primarily for sale to customers it must be held principally for such purpose. Malat V. Riddel,383 U.S. 569 (1966). Further, a taxpayer's property does not qualify for the investment tax credit allowed by section 38 unless such property is also depreciable. Sec. 1.48-1(b), Income Tax Regs.
The issue presented is one of fact. R. E. Moorehead & Son, Inc. v. Commissioner,40 T.C. 704, 709 (1963). In deciding this issue, it is not the nature of the property itself which is determinative, but rather the purpose for which the property is held. Latimer-Looney Chevrolet, Inc. v. Commissioner,19 T.C. 120, 125 (1952). We are convinced that Disk No. 1 was not built by Mr. DeHaai as an item of inventory to be held for sale to customers, but rather as a prototype of Mr. DeHaai's invention. Mr. DeHaai built and used Disk No. 1 as a means to demonstrate his invention to prospective manufacturers. His objective was not to sell Disk No. 1 itself. Disk No. 2, on the other hand, seems at first blush to be an item of inventory since Mr. DeHaai originally began construction of it for sale to a specific buyer. However, *140 a closer look reveals that Mr. DeHaai's intent was otherwise. The agreement entered into between Mr. DeHaai and the would-be buyer of Disk No. 2 was not a typical agreement for the sale of goods. The agreement provided that: (1) Mr. DeHaai reserved the right to show and/or demonstrate Disk No. 2; (2) Mr. DeHaai would pay the buyer $ 1,000.00 for each self-propelled disk sold during the period March 1, 1982 through March 1, 1987; and (3) the buyer would pay Mr. DeHaai $ 60,000.00 in order to buy a new self-propelled disk after sixty disks had been sold and paid for, and would return Disk No. 2 to Mr. DeHaai at such time. This "sale" was merely a way for Mr. DeHaai to finance the construction of a self-propelled disk with a revised design which could be used to capture the attention of the large farm equipment manufacturers. After the buyer repudiated the agreement, Mr. DeHaai went on to build Disk No. 2 himself with bank financing. Like Disk No. 1, we are convinced that Disk No. 2 was simply a prototype used for demonstration purposes and not an item of inventory. Accordingly, we hold that petitioners are entitled to the depreciation expense deductions claimed on Disk No. 1 and *141 Disk No. 2 in 1982 and 1983, and that petitioners are further entitled to the investment tax credit claimed on Disk No. 2 in 1982 and carried back to 1979. To reflect the foregoing and a stipulation of agreed adjustments filed by the parties, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all Rule references are to this Court's Rules of Practice & Procedure, and all section references are to the Internal Revenue Code in effect during the years at issue.↩
2. Mr. DeHaai testified that Disk No. 1 was not completed until 1980, thereby implying that petitioners improperly claimed a depreciation expense deduction in 1979 while Disk No. 1 was still merely construction-in-progress. However, the year 1979 is before the Court only for the limited purpose of deciding whether petitioners were entitled to an investment tax credit carryback from the year 1982. Accordingly, we do not decide the issue implicitly raised by Mr. DeHaai at trial. However, the fact that the construction of Disk No. 1 was still going on in 1980 begs the question of whether additional costs were being incurred by petitioners in such year. Our review of the depreciation schedules attached to petitioners' 1982 and 1983 returns revealed an asset addition in 1980 with a cost of $ 23,240.00 described as a "Disk Prototype," which is the very same description used for the 1979 asset addition of $ 43,672.00. Depreciation expense of $ 2,405.50 was claimed with respect to the 1980 asset addition in each of the years 1982 and 1983, based upon an eight year useful life. This claimed depreciation expense is separate and distinct from that related to Disk No. 2, discussed infra.
Respondent's notice of deficiency did not consider the depreciation deductions of $ 2,405.50 claimed by petitioners in 1982 and 1983, nor has that issue been raised by either party at any point during these proceedings. Since the issue has not been raised, we do not consider it. See sec. 6214(a).↩
3. At trial, petitioners' counsel did not object after respondent gave notice of his intent to file the instant Motion. The Motion provides that "Respondent's counsel has advised petitioners' counsel again that this motion will be filed, and understands↩ that petitioners do not object to it." (Emphasis added.) Rule 50(a) provides that a motion "shall state whether there is any objection to the motion", and in the absence of such a statement we will assume that there is an objection. The language of respondent's Motion, and opposing counsel's failure to object at trial, leaves us uncertain as to whether petitioners do in fact object. Accordingly, we assume that petitioners do object, and we consider the merits of respondent's Motion.
4. RULE 41. AMENDED AND SUPPLEMENTAL PLEADINGS * * * (b) Amendments to Conform to the Evidence: (1) Issues Tried by Consent: When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. The Court, upon motion of any party at any time, may allow such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues, but failure to amend does not affect the result of the trial of these issues. * * *↩